Raymond J. DONOVAN, Secretary of Labor, Petitioner,

and

Mobil Oil Corporation, Intervenor,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent,

and

Petroleum Trades Employees Union, Local 419, Intervenor.

No. 911, Docket 82–4171.

United States Court of Appeals, Second Circuit.

Argued Feb. 17, 1982.

Decided July 19, 1983.

Charles I. Hadden, Atty. U.S. Dept. of Labor, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Karen I. Ward, Associate Sol. for Special Appellate and Supreme Court Litigation, Allen H. Feldman, Counsel for Appellate Litigation, Washington, D.C., of counsel), for petitioner.

Michael W. Sculnick, New York City (Vedder, Price, Kaufman, Kammholz & Day, New York City, Stanley R. Strauss, Washington, D.C., of counsel), for intervenor-petitioner.

George H. Cohen, Washington, D.C. (Jeremiah A. Collins, Bredhoff & Kaiser, Washington, D.C., Laurence Gold, Washington, D.C., Joseph P. Altier, Altier, Wayne & Klein, New York City, of counsel), for intervenor-respondent.

Before VAN GRAAFEILAND and MESKILL, Circuit Judges, and TENNEY, Senior District Judge.[*]

TENNEY, District Judge.

The Secretary of Labor ("the Secretary") has petitioned for review of an order and

---

[*] Of the Southern District of New York, sitting by designation.

decision of the Occupational Safety and Health Review Commission ("the Commission") that remanded a proposed settlement between the Secretary and Mobil Oil Corporation ("Mobil") to an Administrative Law Judge ("ALJ") for further review. Mobil had received a citation for creating a hazardous work condition in violation of the Occupational Safety and Health Act of 1970 ("the Act" or "OSHA"), 29 U.S.C. § 651 et seq. (1976). Both the citation and the proposed settlement called for the immediate abatement of the hazard. The Commission remanded the case in order to give Mobil's employees' representative, the Petroleum Trades Employees Union, Local 419, ("PTEU" or "the union"), an opportunity to present its objections to the methods outlined in the settlement agreement for abating the hazard. Both Mobil and PTEU have been granted intervenor status in this appeal.

The petition for review presents three issues:

1) Whether the Commission's order remanding the settlement to the ALJ is subject to review by this court;

2) Whether the Commission erred in holding that an employee or employee representative has the right to a hearing on his objections to the adequacy of abatement procedures included in a settlement agreement between the Secretary and an employer; and

3) Whether the Commission has the statutory authority to review a settlement between the Secretary and a cited employer where the affected employees have not challenged the reasonableness of the abatement period.

For the reasons stated below we hold that the Commission's remand order is reviewable; that the Commission erred when it remanded the case to the ALJ for a hearing on the union's objections to the proposed methods of abating the hazard; and that the Commission does not have the statutory authority to review a settlement between the Secretary and a cited employer except to hear employee challenges to the reasonableness of the period of time for abating the hazardous or unsafe working condition.

## I

On October 27, 1977 Daniel McCarthy, an employee of Mobil and a member of PTEU, died of asphyxiation while gauging the level of petroleum in a holding tank at the Port Mobil facility on Staten Island. PTEU immediately notified the Occupational Safety and Health Administration ("the Health Administration"), a branch of the Department of Labor. After an inspection by the Health Administration, the Secretary issued a citation[1] charging Mobil with a serious violation of § 5(a)(1) of the Act, 29 U.S.C. § 654(a)(1).[2] The citation proposed immediate abatement of the hazard and assessed a $540 penalty. Pursuant to § 10(a), (c), id. at § 659(a), (c), Mobil filed a notification of its intention to contest the citation. The Commission, which has adjudicatory authority under the Act, assigned an ALJ to oversee the enforcement proceedings. In accordance with § 10(c) of the Act, PTEU, as an employee representative, petitioned for and was granted party status in the proceeding.

Before any hearings were conducted Mobil and the Secretary reached a proposed settlement which they submitted to the ALJ for approval pursuant to Commission Rule 100, 29 C.F.R. § 2200.100.[3] PTEU,

---

**1.** The citation alleged that Mobil had required bulk plant workers, like McCarthy, to perform manual gauging and sampling of floating roof tanks without (1) proper atmospheric testing, (2) contact with other personnel, or (3) adequate training. Joint Appendix at 28.

**2.** Section 5(a)(1), known as the "general duty" clause, provides:

Each employer—
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that

are causing or are likely to cause death or serious physical harm to his employees[.] 29 U.S.C. § 654(a)(1).

**3.** At that time, 29 C.F.R. § 2200.100 provided as follows:

Settlement
(a) Settlement is encouraged at any stage of the proceedings where such settlement is consistent with the provisions and objectives of the Act.
(b) Settlement agreements submitted by the parties shall be accompanied by an appropriate proposed order.

claiming that the settlement would not abate the hazardous condition at the Port Mobil facility, filed a general objection with the ALJ. At a subsequent hearing to determine whether the settlement should be approved in light of the union's objections, both Mobil and the Secretary, citing *United States Steel Corp.,* 4 O.S.H.Cas. (BNA) 2001 (1977), and *UAW,* 4 O.S.H.Cas. (BNA) 1243 (1976), *aff'd,* 557 F.2d 607 (7th Cir.1977) (per curiam), argued that employees or employee representatives may raise only objections relating to the reasonableness of the time period for the abatement of the hazard and may not challenge the abatement methods adopted in a settlement agreement.

In *United States Steel Corp., supra,* the Commission held that an employee's rights as a party to an employer-initiated contest were circumscribed by the limitation imposed on employee contests in the first sentence of § 10(c). That section provides in pertinent part that

> if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing.[4]

The Commission, citing its previous holding in *UAW, supra,*—that employee contests are limited to the reasonableness of the period of time fixed in the citation—concluded that the rights of intervening party

---

(c) Where parties to settlement agree upon a proposal, it shall be served upon represented and unrepresented affected employees in the manner set forth in § 2200.7. Proof of such service shall accompany the proposed settlement when submitted to the Commission or the judge.
29 C.F.R. § 2200.100 currently provides in pertinent part that:
Settlement
(a) *Policy.* Settlement is permitted at any stage of the proceedings. Settlements submitted for consideration after the Judge's decision has been directed for review shall be filed with the Executive Secretary. A settlement proposal shall be approved when it is consistent with the provisions and objectives of the Act.
(b) *Requirements.* Every settlement proposal submitted to the Judge or Commission shall include, where applicable, the following:
(1) A motion to amend or withdraw a citation, notification of proposed penalty, notice of contest, or petition for modification of abatement;
(2) A statement that payment of the penalty has been tendered or a statement of a promise to pay; and
(3) A statement that the cited condition has been abated or a statement of the date by which abatement will be accomplished.
(c) *Filing; service and notice.* When a settlement proposal is filed with the Judge or Commission, it shall also be served upon represented and unrepresented affected employees in the manner prescribed for notices of contest in § 2200.7. Proof of service shall accompany the settlement proposal. A settlement proposal shall not be approved until at least 10 days following service of the settlement proposal on affected employees.

4. Section 10(c) provides in full as follows:
If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) or (b) of this section, or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.
29 U.S.C. § 659(c).

employees are no greater than the rights of employees in employee-initiated cases.

On the basis of *United States Steel Corp.* and *UAW,* the ALJ held that the union had no standing to object to the abatement methods and approved the settlement. The Commission, however, granted the union's request for discretionary review pursuant to § 12(i) of the Act, 29 U.S.C. § 661(i). In a two-to-one decision, the Commission overruled *United States Steel Corp.* and *UAW,* and remanded the case to the ALJ with instructions to hold further adjudicatory proceedings to determine whether the settlement should be approved in light of the union's objections to the proposed methods of abatement. *Mobil Oil Corp.,* 10 O.S.H. Cas. (BNA) 1905 (1982).

Commissioner Cottine, writing the lead opinion for the majority,[5] held that the last sentence of § 10(c), which directs the Commission to prescribe procedural rules providing "affected employees or representatives of affected employees an opportunity to participate as parties to hearings," indicated that Congress intended a broad scope of employee participation in enforcement proceedings before the Commission. He reasoned that since Congress used the term "parties" in § 10(c) it expected the Commission to give this term its legal meaning. He noted that the last sentence of § 10(c) was unqualified by either the Act or the Commission rule permitting employees to elect party status, 29 C.F.R. § 2200.20 (1982),[6] and that the statutory scheme provided for extensive employee involvement in the entire range of investigatory, administrative and judicial functions of the Act.

Consequently, he overruled *United States Steel Corp., supra,* and held that an employee's rights as a party to an employer-initiated contest were not limited to presenting objections to the reasonableness of the abatement period specified in the citation. He concluded that an employee is a full party to Commission proceedings with the same rights as any other party, including the right to object to settlement agreements.

Commissioner Cottine rejected the Secretary's argument that the Commission's consideration of the union's objections to the abatement plan constituted an impermissible interference with the Secretary's prosecutorial discretion. According to the Commissioner, that discretion is limited by the various rights granted to employees and the assignment of the adjudicatory function to the Commission. In order to fulfill the Commission's purpose and prevent the employees' right to present objections from becoming a "hollow right," the Commissioner concluded that the Commission had to review the settlement to determine whether it was consistent with the purposes and provisions of the Act. The Commission majority remanded the case to the ALJ for that purpose.

## II

The threshold question facing the court is whether the Commission's remand order is an appealable order.[7] The order is clearly not covered by § 11(b) of the Act, 29 U.S.C. § 660(b), which permits the Secretary to obtain review of any final order of the Commission.[8] Thus, the order is reviewable

---

**5.** Commissioner Cleary wrote a concurring opinion in which he agreed with Commissioner Cottine's decision in all pertinent respects. 10 O.S.H.Cas. (BNA) at 1920. Commissioner Rowland filed a dissenting opinion asserting that the Commission had misread its role in the enforcement of the Act and had expanded the rights of employees beyond the bounds Congress set out in the Act. *Id.* at 1929.

**6.** 29 C.F.R. § 2200.20 provides in pertinent part that: "(a) Affected employees may elect to participate as parties at any time before the commencement of the hearing before the judge, unless, for good cause shown, the Commission or the judge allows such election at a later time."

**7.** On December 14, 1982 this court denied without prejudice a motion by PTEU to dismiss the Secretary's petition for review. The parties were directed to present the issue to this panel.

**8.** Section 11(b) states in pertinent part that: "[t]he Secretary may also obtain review or enforcement of any final order of the Commission by filing a petition for such relief in the United States court of appeals." 29 U.S.C. § 660(b). PTEU correctly contends that because the validity of the settlement must still be considered by the ALJ, no final disposition has been made of the citation and the Commission's remand order is not final within the meaning of § 11(b).

only if it falls within the narrow collateral order exception articulated in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

In *Cohen* the Supreme Court held that a "small class" of interlocutory orders were appealable notwithstanding the general requirement that an appeal of a decision must await a final judgment on the merits. 337 U.S. at 546, 69 S.Ct. at 1225. More recently, the Court stated that "[t]o come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen,* the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (citations omitted). *See also Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981); *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977); *O'Reilly v. New York Times Co.,* 692 F.2d 863, 866 (2d Cir.1982).

This court has recognized that the collateral order exception is a narrow one and must continue to be read that way " 'lest this exception swallow the salutary "final judgment" rule,' " *Seigal v. Merrick,* 590 F.2d 35, 37 (2d Cir.1978) (quoting *Weight Watchers of Philadelphia v. Weight Watchers Int'l,* 455 F.2d 770, 773 (2d Cir.1972)). *Accord New York v. Dairylea Coop. Inc.,* 698 F.2d 567, 570 n. 10 (2d Cir.1983); *Cullen v. New York State Civil Serv. Comm'n,* 566 F.2d 846, 848 (2d Cir.1977).

The Courts of Appeals for the Third and Sixth Circuits have considered whether a remand order of the Commission falls within the collateral order exception. *Marshall v. OSHRC,* 635 F.2d 544 (6th Cir.1980), involved an ALJ's approval of a motion by the Secretary to vacate a citation on the ground that the Secretary had the unconditional and absolute right to withdraw a citation in a contested case prior to the filing of a complaint. The Commission remanded the case after holding that when the Secretary decides not to prosecute a citation, employees or their representative,

if they have elected to become parties, may prosecute the original citation. The Sixth Circuit concluded that the order was appealable because it "was a final order with respect to the rights of the Secretary as prosecutor." *Id.* at 549 (citations omitted).

In *Marshall v. OCAW,* 647 F.2d 383 (3d Cir.1981), the court faced the same substantive issue we face here—that is, whether the Commission exceeded its statutory authority in remanding a proposed settlement for a hearing on the union's objections to the methods of abatement. Concerning the finality issue the court stated that:

> we are presented with a serious and unsettled question which is too important to be denied review: the power of the Secretary to settle a case as the exclusive prosecutor of the Act. We think it is readily apparent that the Commission's order is final within the meaning of *Cohen* and that this court should assume jurisdiction to preserve rights that would otherwise be lost on review from a final judgment.

*Id.* at 387.

The union argues that the Third and Sixth Circuits have effectively emasculated the final judgment rule in order to preserve the Secretary's claimed right of unfettered prosecutorial discretion. The union focuses on the so-called "critical element" in the Third Circuit's rationale—the court's concern that "if the matter is remanded and proceeds to a hearing, any subsequent review by this court of the *new* record will never fully vindicate the Secretary's position that he could have settled the case on the former record." 647 F.2d at 387 (emphasis in original). PTEU contends that adoption of this reasoning would permit the Secretary to appeal every adverse decision rendered against him by the Commission. This, PTEU argues, would initiate a proliferation of fragmented, piecemeal appeals and destroy the distinction between interlocutory and final orders.

In addition, PTEU contends that the third criterion of the "collateral order" test set forth in *Coopers & Lybrand v. Livesay, supra,*—that the decision be "effectively unreviewable on appeal from a final judg-

ment"—has not been satisfied. The union claims that the Secretary will be able to obtain review of the rejection of the settlement if and when it is actually rejected on the merits.

We find no merit in these or any of PTEU's other arguments.[9] The Commission's order remanding the settlement to the ALJ for consideration of the union's objections fits squarely within the *Cohen* exception. The order conclusively determines that the Secretary does not have the unfettered right to reach a settlement without Commission approval or employee involvement; it resolves an important issue of statutory construction, viz, the respective roles of the Commission, the Secretary, and employees in the administration of the Act; and it is effectively unreviewable on appeal since the issue of the Secretary's right to settle the case will not merge in a final judgment on the merits of the citation.[10] *See Marshall v. OCAW, supra,* 647 F.2d at 387; *Marshall v. OSHRC, supra,* 635 F.2d at 548–49.

Furthermore, we agree that the issue presented to the court is a "serious and unsettled question which is too important to be denied review." 647 F.2d at 387. Allowing the Secretary to appeal the remand order at this stage will not broaden the collateral order exception, *Seigal v. Mer-*

*rick, supra,* or run contrary to the strong federal policy against "piecemeal appeals," *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 178, 75 S.Ct. 249, 250, 99 L.Ed. 233 (1955); *New York v. Dairylea Coop. Inc., supra,* 698 F.2d at 569–70; *New York v. United States,* 568 F.2d 887, 893 (2d Cir. 1977), *appeal after remand,* 600 F.2d 349 (1979), *cert. denied,* 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980). The procedural issue in this case, like the substantive issue, is a very narrow, albeit important, one. Two federal agencies are at loggerheads over the administration of the Act. More than five years have passed since Mobil was cited for the hazardous condition that caused the death of one of its employees, yet due to this litigation no order instructing the company to abate the hazardous condition has been issued. It is within the public interest for this court to resolve this dispute. *See Marshall v. OCAW, supra,* 647 F.2d at 387; *Marshall v. OSHRC, supra,* 635 F.2d at 548–49. Accordingly, we conclude that the Commission's order remanding the settlement agreement between Mobil and the Secretary constitutes " 'a complete, formal and . . . final rejection' " of the Secretary's claimed right to settle citations without Commission approval and without formal hearings on employee objections to the required abatement. *Firestone Tire & Rub-*

9. The union cites three cases in support of its position that the petition for review should be dismissed for lack of jurisdiction: *Donovan v. United Steelworkers,* No. 82–3815 (6th Cir. Jan. 20, 1983); *Gurney Indus., Inc. v. OSHRC,* No. 73–1813 (4th Cir. Nov. 28, 1973); and *Matt J. Zaich Constr. Co. v. OSHRC,* No. 73–1995 (9th Cir. Sept. 13, 1973). None is persuasive. *Gurney* and *Zaich* dismissed on non-finality grounds *employers'* petitions for review of Commission orders disapproving settlements. Clearly, employers do not have the same interests in the administration of the Act as the Secretary. And in *United Steelworkers,* the Sixth Circuit denied a motion to stay a hearing on a union's objection to the Secretary's withdrawal of a citation after he settled a case with an employer. The court's order, however, fails to distinguish its prior decision in *Marshall v. OSHRC, supra,* and provides no basis for denying review in the instant case.

10. If we were to find the remand order unappealable, it is unlikely that the Secretary would have another opportunity to raise the issue of his prosecutorial discretion over settlements in

this court. If the settlement were approved on remand, the Secretary would have no ground to petition for review. If, on the other hand, the Commission disapproved the settlement, the Secretary would be faced with the difficult task of demonstrating that that interlocutory order falls within the collateral order exception. *See Seigal v. Merrick, supra.* However, the mere possibility that the Secretary could obtain appellate review of a Commission order rejecting the settlement does not mean that the instant remand order is effectively reviewable within the meaning of *Cohen. See O'Reilly v. New York Times Co., supra,* 692 F.2d at 866. *Cohen* teaches that the finality requirement should be given a "practical rather than a technical construction." 337 U.S. at 546, 69 S.Ct. at 1225. Thus, we find that a denial of review at this stage would make the Secretary's claimed right to enter settlement agreements without Commission oversight and official union involvement effectively unreviewable within the meaning of the *Cohen* doctrine.

*ber Co. v. Risjord, supra,* 449 U.S. at 376, 101 S.Ct. at 674 (quoting *Abney v. United States, supra,* 431 U.S. at 659, 97 S.Ct. at 2040). Therefore, we hold that the Commission's order is an appealable final collateral order.

## III

Having determined that the order is reviewable our task is to decide whether the Commission exceeded its statutory authority by remanding the settlement to the ALJ. This raises issues of a broader dimension concerning the respective roles of the Secretary, employees and the Commission in the enforcement of the Act. In order to decide if the Commission erred, we must determine whether the union has a right under the Act to present its objections to the effectiveness of a proposed abatement plan included in a settlement agreement, and whether the Commission has the independent statutory authority to review abatement plans approved by the Secretary to determine if they are consistent with the purposes and provisions of the Act.

## A

The Secretary and Mobil argue that the Commission's interpretation of the term "parties" in § 10(c) is contrary to the language of the Act and its legislative history, results in an undue broadening of employees' rights under the Act, and disrupts the enforcement of the Act by infringing upon the Secretary's prosecutorial powers. The Secretary also argues that since § 10(c) makes no reference to settlements, the Commission lacks jurisdiction to review any settlement between the Secretary and an employer except to consider employee objections over the abatement period specified in the agreement.[11] In addition, the Secretary, citing *OCAW v. OSHRC,* 671 F.2d 643 (D.C.Cir.) (per curiam), *cert. denied,* ——

U.S. ——, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982); *Marshall v. OSHRC, supra; Marshall v. Sun Petroleum Prods. Co.,* 622 F.2d 1176 (3d Cir.), *cert. denied,* 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980); *UAW v. OSHRC,* 557 F.2d 607 (7th Cir.1977) (per curiam); and *Dale M. Madden Constr., Inc. v. Hodgson,* 502 F.2d 278 (9th Cir.1974), points out that every court of appeals to consider the question of his settlement authority has endorsed a broad reading of his power to settle cases. Finally, he also notes that his interpretation of the Act has been adopted by the Third Circuit Court of Appeals in *Marshall v. OCAW, supra,* in a situation virtually identical to this one.

In that case the Third Circuit held that the Commission erred in remanding a settlement in order to give a union the opportunity to show lack of abatement. The court relied on *Marshall v. Sun Petroleum Prods. Co., supra,* an earlier decision in which it had reviewed the legislative scheme of § 10(c) and concluded that, after either an employee or employer files a notice of contest, the Commission has the limited jurisdiction to review a settlement to determine whether the period for abatement is unreasonably long. 622 F.2d at 1185. As a corollary, the court had found that "any challenge advanced by an employee is limited to an attack on the reasonableness of the abatement period." *Id.* at 1186.

PTEU argues that both *Marshall v. OCAW* and *Marshall v. Sun Petroleum Prods. Co.* wrongly concluded an employee or employee representative has no greater rights to contest a settlement as a party in an employer-initiated case than an employee or employee representative in an employee-initiated case. PTEU contends that, notwithstanding the specific limitation on employee contests, the last line of § 10(c) establishes an independent basis for employ-

---

11. In December 1979, after this case had been presented to the Commission for review, the Secretary changed his policy position regarding the Commission's authority to review settlements. Previously, the Secretary submitted settlements to the Commission for its approval pursuant to Commission Rule 100, 29 C.F.R. § 2200.100. The Secretary's current position is that the Commission lacks jurisdiction to re-

view settlements, except to hear employee challenges to the reasonableness of the abatement period. Although this issue was not presented below and PTEU questioned at oral argument whether this was an appropriate issue for this court now to decide, the reasoning we employ in disposing of the question which was contested below necessarily resolves this second, closely related question as well.

ees, as parties, to contest abatement plans. Furthermore, PTEU argues that the legislative scheme of the Act evidences a congressional intent to subordinate the Secretary's prosecutorial discretion to the employees' right to a hearing on their objections to abatement procedures outlined in a settlement.

█ We disagree, and we find that nothing in the language of the Act or its legislative history indicates that Congress intended to grant employees or their representatives standing to challenge the substantive aspects of abatement plans or methods included in a settlement agreement.

Congress passed OSHA in 1970 in order to reduce the alarming number of personal injuries and illnesses arising out of hazardous working conditions, and "[t]o assure safe and healthful working conditions for working men and women [in the nation]." Occupational Safety and Health Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590, 1590, *reprinted in* Sub. Comm. on Labor, Senate Comm. on Labor & Public Welfare, The Legislative History of the Occupational Safety and Health Act of 1970, at 1229 (1971) ("Legis. History"). To accomplish this goal the Act creates "[t]wo new remedies ... [which permit the Secretary] ..., proceeding before an administrative agency, (1) to obtain abatement orders requiring employers to correct unsafe working conditions and (2) to impose civil penalties on any employer maintaining any unsafe working condition." *Atlas Roofing Co. v. OSHRC,* 430 U.S. 442, 445, 97 S.Ct. 1261, 1264, 51 L.Ed.2d 464 (1977). Under the Act, the Secretary is given broad rule-making, investigatory and enforcement powers, including, inter alia, the authority to promulgate occupational and health standards, 29 U.S.C. § 655(a), (b); to modify standards or grant variances from them, *id.* at § 655(b)(6)(A), (d); to inspect and investigate places of employment, *id.* at § 657; to

issue citations to employers fixing a reasonable time for abatement of the hazardous or unsafe condition and, at the Secretary's discretion, propose a civil penalty, *id.* at §§ 658, 659(a); to seek enforcement of Commission orders, *id.* at § 660(b); to seek injunctions to restrain imminent dangers, *id.* at § 662; and to prosecute contested citations in enforcement proceedings before the Commission, *id.* at § 659(c).

█ Employees have been granted specific rights in the investigatory and rule-making stages of the Act, including the right to participate in rule-making proceedings, *id.* at § 655(b)(2), (3), and the right to request that the Secretary conduct a workplace inspection when employees suspect that a violation has occurred or an imminent danger exists, *id.* at § 657(f)(1).[12] Nevertheless, employees have a limited role in the enforcement of the Act. Under OSHA, employees do not have a private right of action. *Marshall v. OSHRC, supra,* 635 F.2d at 550–51 (citing *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980)). They may not compel the Secretary to adopt a particular standard. *OCAW v. OSHRC, supra,* 671 F.2d at 649 (citing *National Congress of Hispanic Am. Citizens v. Usery,* 554 F.2d 1196 (D.C.Cir.1977)). As parties, they may not prosecute a citation once the Secretary decides to withdraw it, *Marshall v. OSHRC, supra;* nor may they continue an appeal of a Commission decision once the Secretary unconditionally asserts that he will not prosecute the citation regardless of the decision by the court of appeals, *OCAW v. OSHRC, supra,* 671 F.2d at 650–51.

Indeed, the Act subordinates the prosecutorial discretion of the Secretary to the rights of employees in only two specific situations: first, employees have the right to challenge the period for abatement noted in a citation, 29 U.S.C. § 659(c), and second, employees have the right to bring a manda-

---

**12.** Other rights granted to employees under the Act include, inter alia, the right to have a representative accompany a Health Administration compliance officer during a physical inspection of the workplace, 29 U.S.C. § 657(e); to have an informal review of a decision by the Secretary not to issue a citation to an employer after

a requested inspection, *id.* at § 657(f)(2); to submit written information to the Secretary regarding the promulgation of safety or health standards, *id.* at § 655(b)(1); and to receive notice of, and an opportunity to participate in, hearings concerning the issuance of permanent variances from standards, *id.* at § 655(d).

mus action against the Secretary for his failure to enjoin an imminent danger at their workplace, *id.* at § 662(d).

 Thus, it is apparent from the detailed statutory scheme that the public rights created by the Act are to be protected by the Secretary, *see Atlas Roofing Co. v. OSHRC, supra,* 430 U.S. at 444–47, 97 S.Ct. at 1263–65; *Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1187, and that enforcement of the Act is the sole responsibility of the Secretary, *OCAW v. OSHRC, supra,* 671 F.2d at 649; *Marshall v. OSHRC, supra,* 635 F.2d at 550; *Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1187; *Dale M. Madden Constr., Inc. v. Hodgson, supra,* 502 F.2d at 280. Only he has the authority to determine if a citation should be issued to an employer for hazardous or unsafe working conditions, 29 U.S.C. § 658, and only he may prosecute a citation before the Commission, *Marshall v. OSHRC, supra,* 635 F.2d at 550. A necessary incident to the Secretary's prosecutorial powers is the unfettered discretionary authority to withdraw or settle a citation issued to an employer, *OCAW v. OSHRC, supra,* 671 F.2d at 650; *Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1187, or to settle, mitigate or compromise any assessed penalty, *Dale M. Madden Constr., Inc. v. Hodgson, supra.* A determination that a hazardous or unsafe working condition will be abated by the implementation of specific procedures outlined in a settlement is an enforcement function analogous to the issuance of the original citation, within the Secretary's expertise, *see* 29 U.S.C. §§ 659(b), 666(d), and, thus, subject to his exclusive prosecutorial discretion.

"Informal dispositions [are] the 'lifeblood of the administrative process.'" *Local 282, International Brotherhood of Teamsters v. NLRB,* 339 F.2d 795, 797 (2d Cir.1964) (quoting Attorney General's Committee on Administrative Procedure, Final Report, 35

(1941)). Permitting the Secretary to settle citations issued to employers without hearings before the Commission effectuates the basic remedial purpose of the Act—the rapid abatement of unsafe or unhealthy working conditions. Once an employer files a good faith notice of contest, any requirements to abate the hazardous or unsafe working condition are stayed pending the entry of a final order of the Commission. 29 U.S.C. § 659(b). Continuation of the Commission's proceedings after an employer has agreed to withdraw his notice of contest so that an employees' representative or an employee may present objections to a settlement agreement not only puts off the day when abatement should finally occur, but also prevents the Secretary from taking any steps to compel abatement. *Marshall v. OCAW, supra,* 647 F.2d at 387 (citing *American Cyanamid Co.,* 8 O.S.H.Cas. (BNA) 1346, 1350 (1980) (Comm'r Barnako, dissenting)). Moreover, employers would only be discouraged from entering settlement negotiations with the Secretary if they knew further proceedings before the Commission could be required.

Thus, we find that the legislative scheme of the Act does not evidence a congressional intent to subordinate the Secretary's prosecutorial discretion in reaching settlement agreements to the rights of employees. Indeed, allowing employees to challenge the efficacy of an abatement plan in a settlement would constitute a continued prosecution of the citation by employees and, hence, is proscribed under the Act. *See Marshall v. OSHRC, supra.*

Moreover, we do not agree with the Commission's conclusion that the last line of § 10(c) granting employees party status in a Commission hearing establishes a substantive right to challenge abatement plans included in settlements. That section of the Act confers a procedural right on employees;[13] it does not establish an independent

---

13. As parties to an employer-initiated contest, employees may participate in prehearing discovery and present their own witnesses at Commission hearings. *Marshall v. OSHRC, supra,* 635 F.2d at 552. The Court of Appeals for the District of Columbia has also noted that "[p]ursuant to the statutory mandate of 29 U.S.C. § 659(c), the commission has consist-

ently held that '[an] employee representative electing party status has the right to litigate all the issues raised by the citation and complaint.'" *OCAW v. OSHRC, supra,* 671 F.2d at 648 n. 4 (quoting *Southwestern Bell Tel. Co.,* 5 O.S.H.Cas. (BNA) 1851, 1852 (1977)).

However, the statute on its face does not provide for employee challenges to the abate-

entitlement to a hearing on the employees' objections to the substantive elements of an abatement plan. "[T]hat question must turn on what rights, if any, the Act confers upon [employees]."[14] *Local 282, International Brotherhood of Teamsters v. NLRB, supra,* 339 F.2d at 798.

The only substantive right that employees are granted in enforcement proceedings is the limited right to challenge the reasonableness of the "period of time fixed in the citation for the abatement of the violation." 29 U.S.C. § 659(c). PTEU, however, contends that Congress did not intend the abatement date language in § 10(c) to be a limitation on an employee's rights as a party to challenge abatement plans. The union adopts Commissioner Cottine's theory of why Congress chose to refer only to abatement dates instead of all abatement issues in defining the scope of employee contests. The Commissioner concluded that the language governing employee contests outlined in § 10(c) was merely a reflection of the language governing citations issued pursuant to § 9(a), 29 U.S.C. § 658(a). That section provides in pertinent part that:

> Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation.

He reasoned that inasmuch as § 9(a) makes no reference to abatement requirements or abatement plans, but refers only to the time

for abatement, § 10(c) provides for employee notices of contest over the only abatement matter an employee would have reason to complain about after reading a citation—the reasonableness of the abatement period.

We do not agree. The Commissioner's construction of the statutory phrase relating to employee-initiated contests ignores the plain meaning of the statute. The time for abatement is not the only abatement factor required to be identified in a citation. Each citation describes "the nature of the violation, including . . . the provision of the chapter, standard, rule, regulation, or order alleged to have been violated." And, if Congress had given the same broad rights to employees as it gave to employers in § 10(c), employees, after reading a citation, could contest a number of abatement-related factors. For example, employees could claim that the citation referred to an inapplicable standard and that another standard was more appropriate, *cf. General Elec. Co. v. OSHRC,* 540 F.2d 67, 70 n. 2 (2d Cir.1976), or that the violations at the work site were incorrectly described in the citation. Hence, the limitation on the scope of employee contests in § 10(c) does not parallel the language in § 9(a), but rather demonstrates a congressional intent to limit the rights of employees.

We must conclude that "[t]he express allowance of one specific objection suggests a statutory intent to foreclose at least some other objections." *Marshall v. B.W. Harrison Lumber Co., supra,* 569 F.2d at 1307. If Congress had intended to give employees

---

ment methods an employer would have to use if he were found in violation of the Act. *See Marshall v. B.W. Harrison Lumber Co.,* 569 F.2d 1303, 1308 (5th Cir.1978) ("The statute does not . . . require that the citation specify what corrective measures should be taken, and indeed the employer is often free to correct the violation as he sees fit."); *UAW, supra,* 4 O.S. H.Cas. (BNA) at 1244 (if the Commission finds an employer in violation of the Act it enters an order affirming the violation without reference to a specific abatement plan that the employer must follow).

**14.** Thus, we reject the union's contention that the rights of an employee under the Act should be analogized to the rights of a charging party under the National Labor Relations Act

("NLRA"), 29 U.S.C. § 151 *et seq.* (1976). Although some courts have held that under the NLRA a charging party has the right to a hearing on objections to a settlement agreement between the General Counsel and the charged party, *see NLRB v. OCAW,* 476 F.2d at 1031, 1036–37 (1st Cir.1973); *Concrete Materials of Georgia, Inc. v. NLRB,* 440 F.2d 61, 68 (5th Cir.1971), any rights an employee has under OSHA must flow from the Act itself and not from the gloss that other courts may have added to the NLRA. Furthermore, reliance on the analogy is misplaced since this court has held that a charging party under the NLRA has no right at all to a hearing on its objections to a settlement agreement. *Local 282, International Brotherhood of Teamsters v. NLRB, supra.*

broader rights in enforcement proceedings before the Commission it would not have limited the grounds upon which employees may challenge a citation. More important, the absence of any reference to abatement plans or methods in § 9(a) or § 10(c) indicates that Congress did not intend these matters to be contested before the Commission. See *supra* note 13. Indeed, the language of the Act demonstrates that when Congress intended to give employees the right to a hearing to present objections to an employer's abatement plans or methods it so indicated on the face of the statute. *See, e.g.,* § 6(b)(6)(A), 29 U.S.C. § 655(b)(6)(A).[15]

The legislative history of § 10(c) also suggests that Congress intended to limit the rights of employees in the enforcement of the Act. The committee report on the Senate bill, S. 2193, explains the substantive rights granted to employees as follows:

> Section 10(c) also gives an employee or representative of employees a right, whenever he believes that the period of time provided in a citation for abatement of a violation is unreasonably long, to challenge the citation on that ground. Such challenges must be filed within 15 days of the issuance of the citation, and an opportunity for a hearing must be

provided in similar fashion to hearings when an employer contests. The employer is to be given an opportunity to participate as a party.

Legis. History, *supra,* at 155. All other evidence of congressional intent on this subject demonstrates that employees are entitled to a hearing before the Commission only on matters relating to the period for abatement.[16]

Furthermore, if we were to accept the union's interpretation of § 10(c) an anomalous result would occur. Employees, as parties, would have standing to object to the effectiveness of abatement plans included in settlements between employers and the Secretary after the employer withdraws his notice of contest, but would not have standing in employee-initiated contests to object to abatement plans included in settlements. *See Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1185; *UAW v. OSHRC, supra.* There is no justification for such an anomaly under the legislative plan of the Act or its legislative history.[17] Accordingly, we hold that employees or employee representatives may not use their party status under § 10(c) as a jurisdictional touchstone to obtain a hearing before the Commission on their objections to the effectiveness of an abatement plan included in a settlement agreement between the Secretary and an

---

**15.** Section 6(b)(6)(A) provides in pertinent part that

> [a]ny employer may apply to the Secretary for a temporary order granting a variance from a standard or any provision thereof promulgated under this section.... Any temporary order issued under this paragraph shall prescribe the practices, means, methods, operations, and processes which the employer must adopt and use while the order is in effect and state in detail his program for coming into compliance with the standard. Such a temporary order may be granted only after notice to employees and an opportunity for a hearing: *Provided,* That the Secretary may issue one interim order to be effective until a decision is made on the basis of the hearing.

29 U.S.C. § 655(b)(6)(A).

**16.** The House Amendment to the Senate bill, S. 2193, contained no provision for employee challenges in enforcement proceedings. Legis. History, *supra,* at 1125. Eventually, a compromise was reached; employees were permitted to challenge the reasonableness of the period

for abatement of the hazard, but, in exchange, employers were given the right to reopen the proceedings for a rehearing if they were unable to abate the hazard within the period provided for in the citation. *Id.* at 1192, 1202. In light of the nature of this compromise, one can infer that Congress intended to limit the rights of employees.

**17.** Finally, we must question whether the interpretation of the Act that the union urges on us would provide employees with an unintended method of obtaining work concessions from employers. To be sure, Congress realized that OSHA regulations or citations issued to employers would be used by unions in bargaining sessions. *Legis. History, supra,* at 1223. But there is no indication that Congress intended to supply employees with a separate forum where they could possibly obtain concessions from employers that they could not get in bargaining sessions. Indeed, all evidence is to the contrary. *See supra* note 16.

employer. Employees do not have a right to this type of hearing under the Act, and the Commission erred in remanding the case to the ALJ for a consideration of the union's objections.

## B

Nor do we read the Act as giving the Commission the independent statutory authority to review settlement agreements between the Secretary and cited employers who, as a condition to entering settlements with the Secretary, have in essence acknowledged a violation of the Act by withdrawing their notices of contest. Congress gave the Commission the "relatively limited role of administrative adjudication," *General Elec. Co. v. OSHRC,* 583 F.2d 61, 63 n. 3 (2d Cir.1978), with no direct policymaking functions.[18] *See Marshall v. OSHRC, supra,* 635 F.2d at 547; *Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1183–84; *Dale M. Madden Constr., Inc. v. Hodgson, supra,* 502 F.2d at 280. *But see Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1262 (4th Cir.1974). The agenda of the Commission is tied strictly to § 10 of the Act which, as noted previously, makes no reference to settlements or abatement plans. Its jurisdiction over enforcement proceedings is derivative of the rights granted to employees and employers under the Act, and can be triggered in only one of three ways after an employer has been served with a citation or notification of a penalty. 29 U.S.C. §§ 658(a), 659(a), (b). An employer may elect to contest the citation or notification of penalty; employees may contest the period for abatement contained in a citation; or an employer may seek a modification of an abatement date established by an earlier

final order of the Commission. *Id.* at § 659(c). However, if a case is uncontested "the citation ... shall be deemed a final order of the Commission and not subject to review by any court or agency" including the Commission.[19] *Id.* at § 659(a).

When a citation issued pursuant to § 9(a) is contested, the Commission has the jurisdiction to determine (1) whether a violation of the Act has occurred; (2) whether a reasonable time for abatement has been fixed in the citation; and (3) whether the penalty, if any, is reasonable. *Id.* at §§ 658(a), 659(c), 666(i). As part of this process, the Commission is responsible for finding the facts, *see Pratt & Whitney Aircraft v. Secretary of Labor,* 649 F.2d 96, 105 (2d Cir.1981), and its factual findings must be upheld if supported by substantial evidence. *A. Schonbek & Co. v. Donovan,* 646 F.2d 799, 800 (2d Cir.1981). Upon completion of the enforcement proceeding, an order "affirming, modifying or vacating the Secretary's citation or proposed penalty" is entered by the Commission. *Id.* at § 659(c).

Under § 10, the Commission is expressly precluded from reviewing abatement plans in settlements arising out of either uncontested cases, § 10(a), *Marshall v. Sun Petroleum Prods. Co., supra,* 622 F.2d at 1185, or employee-initiated contests, § 10(c); *UAW v. OSHRC, supra.* Thus, the only inference that we may draw from the statutory scheme is that Congress did not intend to give the Commission the authority to review settlements resulting from the limited number of employer-initiated contests it anticipated.[20] Moreover, the legislative history lends no force to the contention that Congress intended to give the Commission this oversight authority.[21]

---

18. Since the Commission is not a policy-making agency, its rule, 29 C.F.R. § 2200.100, *see supra* note 3, requiring Commission review of proposed settlements "is not entitled to any special deference from the courts." *Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980) (citations omitted).

19. Section 10(b) contains an identical finality provision regarding notices issued by the Secretary alleging that an employer has failed to correct a violation within the abatement period

set forth in a prior citation. 29 U.S.C. § 659(b).

20. The legislative history indicates that Congress assumed that many citations would not be contested by employers. *See* Legis. History, *supra,* at 155 ("It is anticipated that in many cases an employer will choose not to file a timely challenge to a citation when it is issued, on the assumption that he can comply with the period allowed in the citation for abatement of the violation.").

21. In Congress, the debate over the Commission focused not on the scope of its jurisdiction,

A determination whether abatement plans and methods included in a settlement agreement will eliminate the hazardous or unsafe working condition is a policy function beyond the limited jurisdiction of the Commission under § 10(c). If Congress had wanted the Commission to undertake this additional task, it would have delegated this authority in the statute. *See, e.g.,* 30 U.S.C. § 820(k) (Supp. I 1977) (Federal Mine Safety and Health Review Commission shall approve settlements of proposed penalties); 33 U.S.C. § 908(i)(B) (1976) (Secretary may approve settlements relating to claims arising under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1976)); *cf. American Textile Mfrs. Inst., Inc. v. Donovan,* 452 U.S. 490, 510, 101 S.Ct. 2478, 2491, 69 L.Ed.2d 185 (1981). And absent a clear indication of congressional intent to the contrary, we will not read into the Act an authorization to review settlements. *See, e.g., Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (per curiam) (1981); *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

Thus, we conclude that once an employer withdraws its notice of contest, as part of a

settlement agreement with the Secretary, the Commission is ousted of jurisdiction over matters relating to the alleged violation. If the settlement agreement allows for a specific time period within which the hazard must be abated, and employees have filed a separate notice of contest or have become parties, the Commission retains jurisdiction to hear employee complaints over the reasonableness of the abatement period. If, however, the settlement agreement calls for the immediate abatement of the hazardous condition, the Commission has no jurisdiction to review the settlement agreement.

Accordingly, we grant the petition for review, and vacate the Commission's remand order.

but on whether the adjudicatory function should be delegated to the Secretary or to an independent commission. In the original Senate bill, S. 2193, reported to the floor by the Committee on Labor and Public Welfare, the adjudicatory authority would have been within the Department of Labor. *See* Legis. History, *supra,* at 154. A minority of the Senate Subcommittee of Labor, believing that it would be easier to enforce the Act if a separate commission were created, offered an amendment, S. 1061. Senator Javits, the sponsor of the amendment, claimed that a separate commission would speed enforcement of the Act and improve the business community's confidence in the fair administration of the Act. *Id.* at 194–95. He stated:

This is a situation which can disturb very seriously and be very costly to the business community. I feel very strongly that a great element of confidence will be restored in how this very new and very wide-reaching piece of legislation will be administered if the power to adjudicate violations is in the hands of an autonomous body, more than one man, and more than in the Department of Labor

itself. It seems a small price to pay for the confidence that will be inspired by the adoption of this amendment.

[My] argument is especially reinforced by the fact that it is a much more efficient procedure we are outlining here than the procedure solely in the hands of the Secretary.

Legis. History, *supra,* at 470.

Apparently, though, the adjudicatory function was to be the same whether it was exercised by the Secretary or an independent panel. As Senator Javits asserted "the adjudicatory scheme of the committee bill can be made to work, and due process can be preserved under it, but the *independent panel approach would* do the *same job* faster." *Id.* at 393 (emphasis added). Thus, the fact that Congress eventually decided to create an independent commission does not, *in itself, support the conclusion* that Congress intended to give the Commission the power to review settlement agreements. The legislative history makes no mention of granting the Commission authority in this area. Congress adopted S. 1061 in essentially the same form in which it was offered.