**STATE OF NEW YORK,**
**Plaintiff-Appellant,**

v.

**DAIRYLEA COOPERATIVE INC. and**
**Sal Fasulo, Defendants,**

**and**

**Dellwood Foods Inc., et al.,**
**Defendants-Appellees.**

**No. 467, Docket 82–7484.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1982.

Decided Jan. 12, 1983.

---

**6.** Of course, on remand, the district court is not precluded from hearing additional evidence

from other witnesses.

Richard Gabriele, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Lloyd Constantine, Asst. Atty. Gen., New York City, of counsel), for plaintiff-appellant State of N.Y.

Daniel A. Ross, New York City (Stanley M. Kolber, Sheila P. Wasserman, Botein, Hays, Sklar & Herzberg, New York City, of counsel), for defendants-appellees Dellwood Foods, Inc.

Before FEINBERG, Chief Judge, and KAUFMAN and CARDAMONE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This appeal from Judge Owen's order, 547 F.Supp. 306, refusing to sanction a proposed settlement agreement between the State of New York and Dairylea Cooperative Inc.[1] presents an issue of first impression in this Circuit. We are called upon to decide whether parties settling litigation may appeal, pursuant to 28 U.S.C. § 1292(a)(1),[2] from a district court's disapproval of their proffered resolution of an antitrust dispute. Although this question is novel, controversy over the appealability of decisions reached during the course of litigation has occupied substantial amounts of this court's time.[3] Our decisions involving the appeals taken from interlocutory orders have necessarily commenced by recognizing the fundamental principle of finality as a condition of review. Indeed, the strong federal policy against piecemeal appeals is basic to our jurisprudence. See Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). Since we find the important purposes behind this policy would be frustrated by allowing an appeal under the circumstances presented here, and because we find the State of New York has failed to demonstrate that Judge Owen's order falls within the congressional exception to the finality requirement, we hold the challenged order not appealable.

I

In light of our disposition, the facts underlying this dispute and the details of the settlement may be recounted briefly. We need, of course, express no views on the merits of Judge Owen's order rejecting the negotiated agreement.

On April 1, 1981, the State of New York ("NY") commenced this civil antitrust action against twelve milk distributers, including Dairylea and Dellwood Foods, and

---

1. Sal Fasulo, a Dairylea employee, was also a party to the settlement agreement. For convenience, Dairylea Cooperative, Inc. and Mr. Fasulo will be jointly referred to as "Dairylea".

2. 28 U.S.C. § 1292(a)(1) in relevant part states "The courts of appeals shall have jurisdiction of appeals from: Interlocutory orders of the district courts ..., or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, ... except where a direct review may be had in the Supreme Court."

3. We have previously considered, for example, whether a party may appeal from an order granting class action status, see Kohn v. Royall Koegel & Wells, 496 F.2d 1094 (2d Cir.1974), whether an order staying an action pending arbitration is subject to appellate review, see Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d 304 (2d Cir.1967), and, perhaps most important for our purposes, whether the parties may appeal pursuant to 28 U.S.C. § 1291 from a district court's disapproval of a proposed settlement of a stockholder derivative action, see Seigal v. Merrick, 590 F.2d 35 (2d Cir.1978).

twenty-one individuals,[4] alleging they had conspired to fix milk prices and allocate milk customers among themselves within an eleven-county area in New York State.[5] Charging violations of § 1 of the Sherman Act, 15 U.S.C. § 1, and the Donnelly Act, N.Y.Gen.Bus.Law § 345 (McKinney 1968), NY brought suit on its own behalf as a purchaser of milk, as a representative of a class of governmental entities purchasing milk, and as *parens patriae,* pursuant to 15 U.S.C. § 15c, on behalf of all natural persons who purchased milk distributed by defendants.[6]

Negotiations between NY and Dairylea began almost immediately following the filing of the complaint, and on May 28, 1981 the parties entered into the challenged settlement agreement. The agreement provided that Dairylea would contribute a total of $250,000 to a Milk Antitrust Settlement Fund to be distributed by April 30, 1986 among the governmental milk purchasing entities. The settlement further established a coupon program by which Dairylea would compensate consumers for the purported overcharges to which they had been subject as a result of the alleged price-fixing agreement.[7] This coupon program would require Dairylea to place coupons on the side of its half gallon and quart containers of milk which would be redeemable for 10¢ off the price of the next purchase of Dairylea milk or 15¢ off the price of another Dairylea product.[8] In addition, one portion of the proposed consent decree, clearly marked "IV Injunction", would enjoin Dairylea from participating in any agreement to fix the price of milk or allocate customers during the next six years. Finally, Dairylea agreed to allow New York access to its books, records and personnel and to publicize, among its employees, the terms of the arrangement for the purpose of ensuring Dairylea's compliance with the decree's provisions.

NY and Dairylea then submitted their proposed settlement agreement to Judge Owen for approval as required by 15 U.S.C. § 15c(c). The other defendants,[9] including appellee Dellwood Foods, objected to the proposed agreement, claiming it would have an anti-competitive impact on the market for milk. Specifically, Dellwood argued that Dairylea's freedom to use coupons as an effective price cut in markets of its choice would unjustly benefit Dairylea.

Judge Owen upheld Dellwood's position. He reasoned both that the coupon program would provide Dairylea with unfair marketing advantages and that consumers previously harmed by overcharges would not be adequately compensated by a mere payout to future milk drinkers. Accordingly, the district court refused to approve the proposed settlement. On June 18, 1982, NY, acting for itself and Dairylea, filed this appeal.

## II

The firm federal policy against piecemeal litigation can be traced to the Judiciary Act

---

4. On January 10, 1982 a Second Amended complaint was filed naming additional defendants.

5. The eleven counties are New York, Bronx, Kings, Queens, Richmond, Nassau, Westchester, Suffolk, Orange, Rockland, and Putnam.

6. A criminal indictment was also filed in Supreme Court of New York, Bronx County. Charges against Dairylea were subsequently dropped pursuant to a letter agreement resulting from the contested settlement.

7. The total cost of the coupon program to Dairylea would be $750,000, including administrative costs.

8. Approximately three-quarters of the containers with coupons would be issued from Dairylea's processing plant in Woodside, Long Island and sold in New York City. The remainder would be distributed in the surrounding counties.

9. At the time of Judge Owen's decision Dairylea was the only defendant with whom agreement had been reached. During oral argument it was revealed that NY had subsequently obtained settlements with almost all the remaining defendants, including Dellwood. These agreements, however, have not yet been acted upon by Judge Owen. Accordingly, NY's attempt to appeal from the order challenged here is undermined by the fact that this court is being asked to pass on the merits of one of many settlement agreements which would more properly be considered together.

of 1789. Appeals taken before final judgments have been reached frequently serve to impede the effective administration of justice, producing needless delay and unnecessary expense. Federal law, therefore, generally permits appeals only from final decisions of the district courts, 28 U.S.C. § 1291. It is undisputed, however, that Judge Owen's order disapproving the proposed settlement is not a final decision within the literal meaning of § 1291 since it did not result in a judgment terminating the proceeding. *Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Accordingly, NY must demonstrate that Judge Owen's ruling falls within a recognized exception to the so-called final judgment rule.

Appellant relies on 28 U.S.C. § 1292(a), which affords the right to appeal from interlocutory orders of district judges which "grant, continue, modify, *refuse,* or dissolve injunctions" (emphasis added).[10] Specifically, NY argues that because the proposed settlement would enjoin Dairylea from participating in any conspiracy to fix prices or allocate customers, Judge Owen's order disapproving the settlement is in effect the denial of an injunction. Taken to its extreme, however, this argument would render the disapproval of every proposed settlement appealable. It would be a simple matter for the settling parties to include in the agreement an injunctive provision forbidding one party from violating the law. The mere existence of an injunctive clause, therefore, cannot be sufficient to render the disapproval of a proposed settlement agreement appealable.

*Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (*"Carson"*), does not support a contrary result. As set forth in *Carson,* the rationale for permitting appeals from denials of settlement agreements which have the "practical effect of denying an injunction" is to allow appellate review only of orders which might result in serious, irreparable harm to the party to whom injunctive relief is denied. NY and Dairylea have failed to make such a showing. The parties remain free to return to the bargaining table to devise a settlement which would respond to Judge Owen's objections. Indeed, the district court opinion explicitly expresses a willingness to consider further proposals. In the meantime, New York consumers who must wait to recover the alleged overcharges will suffer injury neither grave nor beyond redress.

NY points to language in *Carson,* intimating that the mere deprivation of the "right to compromise [a] dispute on mutually agreeable terms" could constitute the "serious and irreparable consequences" necessary to render a disapproval of a settlement agreement appealable. That language, however, must be read in the context of a settlement which would have required American Brands to establish hiring goals for qualified blacks in supervisory positions, change seniority and benefit systems, and permanently refrain from discriminating against blacks. "Prospective relief, [therefore] was at the very core of the disapproved settlement." *Carson, supra,* 450 U.S. 84, 101 S.Ct. at 996. Here the disapproved agreement basically sets terms for money payments and the primary aspect of the injunctive relief simply orders Dairylea not to violate the law.[11] Moreover, a literal reading of *Carson's* suggestion that the mere inability to settle could establish irreparable harm would permit appeal from every denial of a proposed settlement. That result was clearly not contemplated by the *Carson* court.

---

**10.** NY concedes for purposes of this appeal that Judge Owen's order is not appealable pursuant to 28 U.S.C. § 1291. Indeed, this court has repeatedly made clear that the exception set forth in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), permitting appeals from orders not final in a literal sense is to be kept within narrow bounds. *See, e.g., Seigal v. Merrick,* 590 F.2d 35, 37 (2d Cir.1978).

**11.** Although it could be argued that other details in the proposed consent decree resemble injunctive provisions, close examination reveals these particulars merely clarify the method by which Dairylea will provide monetary refunds and establish the manner in which the settlement will be enforced.

Appellant's reliance on *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir.1982), is similarly misplaced. In *Plummer* this court did allow an appeal from an order rejecting a proposed settlement which established a scheme for monetary payments to black employees in the future. The agreement, however, also contained injunctive provisions ordering Chemical Bank to promote designated individuals to specific jobs. The effect of denying injunctive relief, therefore, would have been to compel particular individuals to defer promotions. No similar individualized harm is involved here. In addition, the *Plummer* court's citation to *Carson* to find appealability was well founded in light of the Supreme Court's concern as expressed in *Carson* to encourage settlement in Title VII actions. Accordingly, *Plummer* does not establish the proposition that the disapproval of every settlement containing injunctive provisions may be appealed pursuant to 28 U.S.C. § 1292(a).

Finally, the agreement between New York and Dairylea, unlike the settlements in *Carson* and *Plummer,* would not, even if approved, terminate the litigation. The terms reached between NY and the other defendants have yet to be examined by Judge Owen. *See* note 9 *supra.* Accordingly, appellate review at this stage would require detailed review of a complex, incomplete record "thrust[ing this court] indiscriminately into the trial process." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 476, 98 S.Ct. 2454, 2462, 57 L.Ed.2d 351 (1978). Indeed, the maintenance of the appropriate relationship between trial and appellate courts is one vital purpose of the final judgment rule whose broader goals have been aptly stated by Justice Frankfurter:

> Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress, from the very beginning has, by preventing piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.

*Cobbledick v. United States,* 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

NY has failed to produce a compelling reason for us to depart from the sound policy of finality. Accordingly, the appeal is dismissed.