**Roysworth GRANT, Plaintiff–Appellee,**

**Equal Employment Opportunity Commission, Willie Ellis, the City of New York, Plaintiffs–Appellees,**

**The Hispanic Society and Individual Nonwhite Local 28 Members, Plaintiffs–Intervenors–Appellees–Movants,**

**v.**

**LOCAL 638, Defendant–Intervenor,**

**Local 28, Sheet Metal Workers' International Association, Defendant–Intervenor–Appellant–Respondent.[1]**

No. 03–6189.

United States Court of Appeals, Second Circuit.

Argued: Feb. 3, 2004.

Decided: June 18, 2004.

Jyotin Hamid, Debevoise & Plimpton, New York, NY, (Edwin G. Schallert, Patricia G. Corley and Wendy B. Reilly, Debevoise & Plimpton; Michael L. Foreman and Audrey J. Wiggins, Lawyers' Committee for Civil Rights Under Law, Washington, DC; Alan Levine, Puerto Rican Legal Defense and Education Fund, New York,

---

1. This caption varies from the official caption, which is incorrect in certain respects, including the description of plaintiffs-intervenors.

*The Clerk of the Court is directed to amend the official caption accordingly.*

NY, on the brief) for Plaintiffs–Intervenors–Appellees–Movants.

David J. Cynamon, Shaw Pittman, LLP, Washington DC, (Christine N. Kearns and Karen–Faye Newman, Shaw Pittman, LLP; Edmund P. D'Elia, New York, NY; John O'B. Clarke, Highsaw, Mahoney & Clarke, P.C., Washington, DC, on the brief) for Defendant–Intervenor–Appellant–Respondent.

Eric S. Dreiband, General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, Paul D. Ramshaw, Attorney, U.S. Equal Employment Opportunity Commission, Washington, DC, for Plaintiff–Appellee Equal Employment Opportunity Commission.

Before: POOLER, SOTOMAYOR, and WESLEY, Circuit Judges.

POOLER, Circuit Judge.

In this long-standing race discrimination lawsuit, Local 28 of the Sheet Metal Workers' International Association ("Local 28" or "the union") has been proven guilty of discrimination against nonwhite [2] workers, subjected to affirmative relief, and found guilty of contempt. Outstanding issues include individual entitlement to back pay and revision of affirmative action goals in light of prior contempt findings. In early 2003, Local 28 settled these issues with the governmental plaintiffs, the Equal Employment Opportunity Commission ("EEOC"), the New York State Division of Human Rights ("DHR"), and the City of New York ("city") (collectively, "the government"). After receiving objections from plaintiffs/intervenors, the Hispanic Society and individual nonwhite Local 28 members (collectively, "intervenors"), the district court refused to approve the proposed settlement. Local 28 contends that the district court's order is appealable either (a) because it effectively denied a request to modify an injunction and thus is appealable pursuant to 28 U.S.C § 1292(a)(1), or (b) because under applicable Supreme Court precedent, an order refusing to approve a Title VII settlement is always appealable on an interlocutory basis. We agree with intervenors that this appeal is not exempt from the general rule that interlocutory orders are not appealable and thus dismiss Local 28's appeal.

## BACKGROUND

In 1971, the Department of Justice, which has since been succeeded by EEOC, sued Local 28, three other unions, and the unions' joint apprenticeship committee, alleging that they had discriminated against nonwhites. Shortly thereafter, the city of New York intervened as a plaintiff. *EEOC v. Local 638,* 401 F.Supp. at 470.

In a 1975 bench trial, the government proved that Local 28 had discriminated against nonwhites. *See EEOC v. Local 638,* 401 F.Supp. 467, 487 (S.D.N.Y.1975), *aff'd in part, modified in part,* 532 F.2d 821 (2d Cir.1976). After trial, the district court ordered back pay, enjoined Local 28 from further discrimination, and directed the institution of an affirmative action plan and other affirmative relief. *EEOC v. Local 638,* 401 F.Supp. at 488–92. Since the trial, issues concerning the scope of the relief ordered and the defendants' lack of compliance have been presented to the district court, this court, and the Supreme Court.[3]

---

**2.** "Nonwhite" is a term of art used in this litigation to designate "black" workers and workers with Hispanic surnames. *EEOC v. Local 638,* 401 F.Supp. 467, 470 n. 1. We adopt the historical definition and therefore use the term "black" for workers we would normally identify as African–American.

**3.** *See, e.g., EEOC v. Local 638,* 421 F.Supp. 603 (S.D.N.Y.1975); *EEOC v. Local 638,* 565

In 1999, we affirmed, in pertinent part, a district court decision requiring back pay hearings to determine the amounts to be awarded as a result of Local 28's prior contempts. *City of New York v. Local 28*, 170 F.3d 279, 286 (2d Cir.1999). Also unresolved at that time was the recalculation of the affirmative action goal, stated as a percentage of membership, which too was necessitated by past contempt findings. In May 2001, EEOC and Local 28 began settlement talks that ultimately produced a proposed consent order. The proposed order, among other things, capped the potential back pay award, set a higher affirmative action goal, lowered the union's contribution to a fund for training minorities, provided for still lower contribution rates if the union met its affirmative action goals, and permitted the union once it satisfied certain conditions to petition the district court for a modification of existing court orders.

On December 19, 2002, the district court conditionally approved the settlement. *EEOC v. Local 638*, 2002 WL 31856826, at *1–2 (S.D.N.Y. Dec. 19, 2002). On April 9, 2003, the Hispanic Society and individual nonwhite members of Local 28 moved to intervene, claiming that the government had not adequately protected their interests. *See EEOC v. Local 638*, 2003 WL 21767772, at *1 (S.D.N.Y. July 30, 2003).

The district court granted intervention, and on August 6, 2003, it disapproved the proposed consent order. *EEOC v. Local 638*, 2003 WL 21804837, at * 3 (S.D.N.Y. Aug. 6, 2003). Although the district court acknowledged that voluntary compliance is the preferred method for settling Title VII actions, the agreement did not survive the district court's mandated review of "the proposal to make sure that it is fair, adequate, and reasonable." *Id.* at *1. The factors that persuaded the court not to approve the agreement included the opposition to it by nonwhite union members and the court's conclusion that the government and individual plaintiffs risked little by litigation. *Id.* at *1–2. In particular, the court noted that its own expert had determined the damages to be nearly $150 million, some $145 million more than the capped amount, and that both the district court and this court agreed that Local 28 had the ability to pay more than the capped amount. *Id.* at *2 (citing *EEOC v. Local 638*, 117 F.Supp.2d 386, 392 (S.D.N.Y.2000), aff'd, 247 F.3d 333 (2d Cir. 2001)). The court also acknowledged that withholding approval would lengthen the course of litigation but said:

> Much of the litigation to date has resulted from Local 28's non-compliance with this court['s] orders after liability was established in 1975. The Union should not be rewarded for dragging its feet until government plaintiffs reached a point of exhaustion.

*Id.* at * 3.

Local 28 timely appealed the district court's order, and on November 12, 2003, the plaintiffs/intervenors moved to dismiss on the basis of mootness and lack of jurisdiction.

## DISCUSSION

"Ordinarily, appeals are permitted only from 'final decisions of the district

---

F.2d 31 (2d Cir.1977); *EEOC v. Local 638*, 1982 WL 445 (S.D.N.Y. Aug. 16, 1982), *aff'd in part, rev'd in part*, 753 F.2d 1172 (2d Cir. 1985), *aff'd sub nom., Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *EEOC v. Local 638*, 889 F.Supp. 642 (S.D.N.Y.1995), *modified*, 921 F.Supp. 1126

(S.D.N.Y.1996), *aff'd in part, vacated in part, rev'd in part*, 81 F.3d 1162 (2d Cir.1996); 13 F.Supp.2d 453 (S.D.N.Y.1998), *aff'd in part, rev'd in part, sub nom., City of New York v. Local 28*, 170 F.3d 279 (2d Cir.1999). We do not recite this history in more detail because it is not germane to the issue we resolve today.

courts.'" *Karaha Bodas Co., v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 81 (2d Cir. 2002) (quoting 28 U.S.C. § 1291). Local 28 does not claim—and it could not—that the district court's order was a final judgment. Instead, the union relies on 28 U.S.C. § 1292(a)(1), an exception to the general prohibition against appealing nonfinal orders. Section 1292(a)(1) gives us jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." Based on the terms of the proposed consent order, Local 28 claims that the district court's order has the practical effect of refusing to modify an injunction and therefore is appealable.

Relying primarily on *Local Number 93 v. City of Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), and *Carson v. American Brands, Inc.*, 450 U.S. 79, 83–84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the union also insists that an order refusing to accept a consent order in a discrimination case is always appealable on an interlocutory basis.

Section 1292(a)(1), by its terms, applies only when a district court actually grants, dissolves, or modifies an injunction or refuses to take one of these actions. The Supreme Court has recognized, however, that interlocutory jurisdiction *may* exist where the district court's order has the "practical effect" of denying an injunction. *Carson*, 450 U.S. at 83–84, 101 S.Ct. 993. "Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, ... appeal as of right under § 1292(a)(1) will be available only ... where an appeal will further the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, conse-

quence.'" *Id.* at 84, 101 S.Ct. 993 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955)). If serious or irreparable harm is not present, "the general congressional policy against piecemeal review will preclude interlocutory appeal." *Id.*

The *Carson* court found irreparable harm based on several circumstances. First, in refusing to enter the proposed consent decree,

> the District Court made clear that it would not enter any decree containing remedial relief provisions that did not rest solidly on evidence of discrimination and that were not expressly limited to actual victims of discrimination. In ruling so broadly, the court did more than postpone consideration of the merits of petitioners' injunctive claim. It effectively foreclosed such consideration. Having stated that it could perceive no vestiges of racial discrimination on the facts presented, and that even if it could, no relief could be granted to future employees and others who were not actual victims of discrimination, the court made clear that nothing short of an admission of discrimination by respondents plus a complete restructuring of the class relief would induce it to approve remedial injunctive provisions.

*Id.* at 87 n. 12, 101 S.Ct. 993 (internal quotation marks and citations omitted). Thus, even after a trial, the *Carson* plaintiffs could not have received the relief they requested. Second, "[b]ecause a party to a pending settlement might be legally justified in withdrawing its consent to the agreement once trial is held and final judgment entered, the District Court's order might thus have the 'serious, perhaps irreparable, consequence' of denying the parties their right to compromise their dispute on mutually agreeable terms." *Id.* at 87–88, 101 S.Ct. 993 (footnote omitted).

Finally, the proposed consent decree would have given the plaintiffs, in this Title VII case, immediate access to transfers and promotions. The Court feared that delaying approval of the consent decree "might ... den[y petitioners] specific job opportunities and the training and competitive advantages that would come with those opportunities." *Id.* at 89 n. 16, 101 S.Ct. 993.

The *Carson* court also noted that "delaying appellate review until after final judgment would adversely affect the court of appeals' ability fairly to evaluate the propriety of the district court's order." *Id.* at 88 n. 14, 101 S.Ct. 993. However, it did not identify this difficulty as a species of irreparable harm. *See id.*

*Carson* thus requires a showing that (1) the district court, by refusing to approve a settlement, effectively denied a party injunctive relief and (2) in the absence of an interlocutory appeal, a party will suffer irreparable harm. We question whether Local 28 has made a sufficient showing under the first prong and are certain that its showing of irreparable harm is insufficient.

With respect to the first *Carson* prong, which mandates that the order have the practical effect of denying injunctive relief, we note that Local 28 seeks review of an interlocutory order denying modification of an existing injunction entered in favor of the governmental plaintiffs and benefitting the individual plaintiffs. Moreover, the proposed modification of the equitable relief in the settlement agreement is tangential to the core settlement provision

capping the union's liability for back pay and to the core relief awarded by the district court after trial. The settlement agreement resolves only the relief to be accorded as a result of Local 28's contempt of court. In contrast, the workers in *Carson* stood to benefit immediately from approval of the order in ways that were central to their grievances. In other respects, the proposed modification of previously ordered injunctive relief is conditional. For example, Local 28 could petition for relief from previous court orders if it demonstrated that for one year, it had "maintained its nonwhite-journeyperson membership percentage at 40%," a system generating statistics concerning compliance had been in effect for three years, and its joint apprenticeship committee had "developed and validated a permanent nondiscriminatory selection procedure." Proposed Consent Ord. at 23 ¶ 55. We question whether the *Carson* Court intended that its holding apply to orders disapproving consent decrees that would modify long-standing injunctive relief in ways that are tangential to the central issues in the case and, in some respects, conditional.[4]

In any case, it is certain that Local 28 has not shown irreparable harm of the type envisioned in *Carson*. The district court's order does not, as did the order in *Carson*, effectively foreclose the parties from negotiating a settlement modifying the previously existing injunction. Rather, the order appealed from merely requires the parties to obey orders that have been in effect for years until a hearing is held

---

**4.** EEOC also argues based on *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744–45, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) that *Carson* applies only where the appellant has sought an injunction against the other parties to the consent agreement. Because Local 28 did not seek injunctive relief against the governmental plaintiffs, EEOC contends that we lack

jurisdiction under *Liberty Mutual*. We do not reach this issue because we find no irreparable harm exists. However, we note that the question is not as straightforward as EEOC posits. Although Local 28 did not seek an injunction against EEOC, it *did* seek modification of the existing injunctive relief against it.

on the scope of relief to be ordered for Local 28's contempts or until the parties succeed in obtaining court approval for a negotiated settlement. Because the district court made no comments similar to those of the district court in *Carson*, there is no indication that it would never allow a modification of injunctive relief similar to that in the proposed consent decree.

Moreover, any harm that Local 28 may suffer in the short term from the district court's refusal to approve the consent decree can be compensated with damages and thus is not irreparable. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989). The advantages to Local 28 in the short term are purely financial, i.e., the reduction in the amount it must pay to the training fund and the cap on potential back pay awards. This type of damage contrasts starkly with the loss of job opportunities that the plaintiffs in *Carson* would have incurred. In sum, Local 28 will not incur two of the principal harms discussed in *Carson*.

We acknowledge that Local 28 may be deprived of its opportunity to settle this case with the EEOC on terms as favorable as those contained in the settlement agreement. However, we long ago held that more is required in order to find irreparable harm. *See State of New York v. Dairylea Coop., Inc.*, 698 F.2d 567, 570 (2d Cir.1983). In *Dairylea*, we held that no appeal lay from an interlocutory order refusing to approve a settlement where the only irreparable harm alleged was the inability to negotiate a settlement on the terms in the proposed consent decree. *Id.* We acknowledged the language in *Carson* describing the "right to compromise [a] dispute on mutually agreeable terms," as a species of irreparable harm, but said:

That language, however, must be read in the context of a settlement which would have required American Brands to es-

tablish hiring goals for qualified blacks in supervisory positions, change seniority and benefit systems, and permanently refrain from discriminating against blacks. "Prospective relief [therefore] was at the very core of the disapproved settlement."

*Id.* (quoting *Carson*, 450 U.S. at 84, 101 S.Ct. 993). Because Local 28 has shown only the temporary loss of a bargain, which does not by itself constitute irreparable harm, we hold that we have no jurisdiction over this appeal under 28 U.S.C. § 1292(a).

The union argues, however, that a dictum in *Local Number 93* citing *Carson* establishes, as a matter of law, that an order disapproving a settlement agreement in a Title VII case is always appealable on an interlocutory basis. Local 28 places far too much weight on a dictum in a case that is unrelated on its facts or law to this case or to *Carson*. The issue presented in *Local Number 93* was "whether the consent decree is an impermissible remedy under § 706(g) of Title VII." 478 U.S. at 513, 106 S.Ct. 3063. In concluding that § 706(g) of Title VII did allow consent decrees granting greater relief than could have been achieved at trial, the Court emphasized that voluntary compliance was the preferred means of achieving Title VII's goals and cited numerous instances in which the Court had so held. *Id.* at 515–17, 106 S.Ct. 3063. Regarding *Carson*, the Court said, "we held that a District Court's order denying entry of a consent decree is appealable under 28 U.S.C. § 1292(a)(1) because such an order undermines Congress' 'strong preference for encouraging voluntary settlement of employment discrimination claims' under Title VII." *Id.* at 517, 106 S.Ct. 3063 (quoting *Carson*, 450 U.S. at 88 n. 14, 101 S.Ct. 993). Local 28 reads this characterization of *Carson* as a broad statement that any

refusal to approve a Title VII consent degree is immediately appealable. This interpretation is untenable. The *Carson* Court clearly set forth conditions that must be met before failure to approve a consent decree is immediately appealable. *Carson*, 450 U.S. at 84, 101 S.Ct. 993. The *Local Number 93* Court, whose inquiry centered on the permissibility of consent decrees that grant greater relief than can be obtained in a civil action, used *Carson* as an example of the importance that courts accord to parties' voluntary settlements in Title VII actions. 478 U.S. at 515–17, 106 S.Ct. 3063. The Court focused on the policy reason motivating the *Carson* holding and not on the holding's exact parameters. Certainly, the Court did not purport to broaden the conditions *Carson* set for immediate appealability. Therefore, *Local Number 93* is not relevant to the Supreme Court's requirements for immediate appealability of orders declining to approve consent decrees.

We recognize that there is some tension between our holding and *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998). As we explain below, *City of Hialeah* is distinguishable, and to the extent that it is not, we respectfully disagree with its reasoning. In *City of Hialeah*, a Title VII case, the Eleventh Circuit considered the appealability of an order declining to approve a consent decree requiring the city to take several affirmative steps to recruit black applicants for the fire and police departments. 140 F.3d at 972. At a fairness hearing, several police officers and unions representing both fire fighters and police officers objected. *Id.* Holding that certain terms of the negotiated agreement violated collective bargaining agreements, the district court refused to approve it. *Id.* at 972–73.

The government appealed, and the Eleventh Circuit held that it had jurisdiction to

entertain the appeal. *Id.* at 974. It explained:

A close examination of the two *Carson* prerequisites and their application to Title VII cases leads us to conclude that. . . . [w]henever a district court refuses to enter a Title VII consent decree, the *plaintiffs* can immediately appeal that order under 28 U.S.C. § 1292(a)(1) instead of waiting until after the district court has entered a final judgment in the case.

*Id.* (emphasis added). The Eleventh Circuit's decision was supported by (1) the dictum in *Local No. 93*, which the court said was more persuasive than usual because the Supreme Court interpreted its own precedent; (2) the court's conclusion that every order refusing to approve a consent decree will have the practical effect of refusing an injunction because consent decrees always contain injunctive relief; and (3) the court's holding that refusing to approve a Title VII settlement always triggers irreparable harm based on the parties' loss of their right to settle on mutually agreeable terms and on the difficulty of evaluating the proposed settlement after trial. *Id.* at 974–75.

The differences between this case and *City of Hialeah* are readily apparent. First, it is not the plaintiff—the entity seeking to remediate past discrimination—who appeals. Second, an injunction already is in place. Third, Local 28 would receive from the consent decree only tangential and conditional injunctive relief. We doubt therefore that the Eleventh Circuit would extend *City of Hialeah* to the facts of this case.

Moreover, we respectfully disagree with key portions of the *City of Hialeah* analysis. While we have no doubt that Supreme Court dicta interpreting prior holdings are persuasive, we read the *Local 93* dictum as referring to the policy rationale for *Car-*

*son's* holding and not as an attempt to define the scope of the holding. In addition, finding irreparable harm inherent in the disapproval of a consent decree solely because of the risks of litigation and the difficulty of retrospective evaluation of a proposed settlement would effectively make all orders refusing to approve consent decrees, and not just those in Title VII cases, immediately appealable. *See Dairylea Coop.,* 698 F.2d at 570. This interpretation of *Carson* also sweeps far beyond *Carson*'s actual holding. It bears repeating that the *Carson* court relied heavily on the district court's warning that it would never approve a settlement similar to the one the parties made. *See Carson,* 450 U.S. at 87 n. 12, 101 S.Ct. 993; *cf. EEOC v. Pan Am. World Airways, Inc.,* 796 F.2d 314, 317 (9th Cir.1986) (finding no irreparable harm where district court disapproved consent decree on narrow grounds and "in no way inhibit[ed] further negotiations ... to meet the concerns raised."). We therefore reject Local 28's contention that *Carson,* as interpreted by *Local 93,* implies a right to immediately appeal any order disapproving a proposed Title VII consent decree.

Because the district court's order has only a tangential and remote effect on injunctive relief, Local 28 has not shown that its ability to negotiate a settlement is impaired in any respect, and Local 28 has not demonstrated any other form of irreparable harm, we hold that the district court's order is not appealable. Having found that Local 28 has no right to an interlocutory appeal, we have no occasion to consider the intervenors' mootness argument.

## CONCLUSION

For the reasons discussed, we dismiss Local 28's appeal for lack of appellate jurisdiction.