336

**U.S. SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**CITIGROUP GLOBAL MARKETS INC., Defendant.**

No. 11 Civ. 7387(JSR).

United States District Court, S.D. New York.

Dec. 27, 2011.

Order Supplementing Memorandum Dec. 29, 2011.

Matthew Theodore Martens, Jeffrey Thomas Infelise, Kenneth R. Lench, Reid Anthony Muoio, Thomas D. Silverstein, Securities and Exchange Commission, Washington, DC, for Plaintiff.

Brad Scott Karp, Susanna Michele Buergel, Theodore Von Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendant.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

On December 15, 2011, plaintiff U.S. Securities and Exchange Commission ("SEC") filed a purported appeal from this

Court's Opinion and Order rejecting the parties' proposed Consent Judgment. *See SEC v. Citigroup Global Mkts.,* 827 F.Supp.2d 328, 330, 2011 WL 5903733, at *2 (S.D.N.Y. Nov. 28, 2011) (the "November 28 Decision"). Defendant Citigroup Global Markets Inc. ("Citigroup") filed an identical notice of appeal on December 19, 2011. The SEC, joined by Citigroup, now moves to stay all proceedings in this case pending determination of those appeals. For the following reasons, the motion is denied.

■ Because interlocutory appeals derail the orderly conduct of lawsuits and result in piecemeal and duplicative litigation, such interim appeals are strongly disfavored in the federal system. *See Mohawk Industries, Inc. v. Carpenter,* —— U.S. ——, 130 S.Ct. 599, 605, 175 L.Ed.2d 458 (2009). Thus, the filing of a "plainly unauthorized notice of [interlocutory] appeal" does not divest the district court of jurisdiction. *United States v. Rodgers,* 101 F.3d 247, 251–52 (2d Cir.1996); *see also Leonhard v. United States,* 633 F.2d 599, 610–11 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Where interlocutory appeals are permitted, moreover, "the filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *New York State NOW v. Terry,* 886 F.2d 1339, 1350 (2d Cir.1989). Accordingly, the Court, before considering the merits of any application for a stay, must first ascertain whether there is a statutory basis for the filing of these interlocutory appeals and the extent, if any, to which the filing of such appeals deprives the Court of jurisdiction.

The actual Notices of Appeal filed by the SEC and Citigroup—respectively documents # 39 and # 43 on the docket of this case—do not recite any statutory basis for the appeals. Even in its instant Memorandum of Law in Support of its Motion for Stay Pending Appeal ("SEC Mem"), the SEC—while asserting that the filing of its Notice of Appeal divests this Court of jurisdiction, *see* SEC's Memorandum of Law in Support of its Motion for Stay Pending Appeal ("SEC Mem.") at 5—limits its entire discussion of the purported statutory basis for filing its interlocutory appeal to two brief sentences in footnote 2 on page 8: "The Commission believes that the Court's decision is a reviewable interlocutory order pursuant to 28 U.S.C. § 1292(a)(1). *Carson v. American Brands, Inc.,* 450 U.S. 79, 89, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *State of New York v. Dairylea Coop., Inc.,* 698 F.2d 567, 570 (2d Cir.1983)." Citigroup, in its corresponding Memorandum in Support of the Securities and Exchange Commission's Motion for a Stay Pending Appeal ("Citigroup Mem.") does not recite any statutory basis for its appeal whatsoever.

■ Section 1292(a)(1) grants appellate "jurisdiction of appeals from interlocutory orders of the district courts … granting, continuing, modifying, refusing, or dissolving injunctions." Ordinarily, such an appeal does not divest the district court of general jurisdiction; rather, the case "proceeds [in the district court] on the merits, unless otherwise ordered." *Terry,* 886 F.2d at 1350. As for consent judgments, Section 1292(a)(1) allows an interlocutory appeal from the rejection of a proposed consent decree only where injunctive relief is "at the very core of the disapproved settlement." *Carson,* 450 U.S. at 84, 101 S.Ct. 993. By contrast, "the mere existence of an injunctive clause" that "simply orders [defendant] not to violate the law" is insufficient to permit an interlocutory appeal under section 1292(a)(1). *Dairylea,* 698 F.2d at 570. Put another way, to qualify under § 1292(a)(1) for an interlocu-

tory appeal from a rejection of a consent judgment, the appellant must show that the injunctive relief is so central to the rejected settlement that the appellant will suffer immediate and irreparable harm from the denial, not of the settlement generally, but of the injunctive relief specifically. *Grant v. Local 638,* 373 F.3d 104, 108 (2d Cir.2004).

■ In its November 28 Decision, this Court noted that the proposed Consent Judgment's injunctive provisions—including not just its prohibition of future violations but also its imposition of specific prophylactic measures—were relevant and material to the scope and nature of the Court's evaluation. But the Court's denial of injunctive relief is not the basis on which the parties premise their instant appeals. Indeed, the injunctive provisions of the proposed Consent Judgment go virtually unmentioned in either of the parties' memoranda submitted with this motion or, for that matter, in the public statement the SEC issued on December 15 as to why it was taking its appeal. *See* SEC Enforcement Director's Statement on Citigroup Case, Dec. 15, 2011, http://www.sec.gov/news/press/2011/2011–265.htm. Rather, the alleged "legal error" that the SEC, joined by Citigroup, seeks to correct by their appeals is this Court's insistence that it be provided with proven or acknowledged facts in order to evaluate whether the proposed Consent Judgment, in any of its aspects, is fair, reasonable, adequate, and in the public interest. SEC Mem. at 11. Thus, the gravamen of the parties' appeals has nothing to do with the denial of injunctive relief *per se.*

Moreover, the failure to grant the injunctive relief sought in the proposed Consent Decree does not relate in any material way to the primary irreparable harm that the parties assert they will suffer if the Consent Decree is not immediately approved, to wit, that they will be required "to allocate substantial resources to the litigation of this matter." SEC Mem. at 12; *see also* Citigroup Mem. at 3. This alleged harm is a product of the rejection of the settlement overall, and would not be cured by the granting of the proposed injunctive relief.

Furthermore, as respects the SEC, the alleged harm is largely illusory, because the SEC has filed a parallel action against an Citigroup employee, Brian Stoker, that repeats every allegation that is made in the Citigroup complaint, and more. *Compare* Complaint, *SEC v. Stoker,* 11 Civ. 7388, Dkt. 1 *with* Complaint, *SEC v. Citigroup Global Mkts.,* 11 Civ. 7387, Dkt. 1. Mr. Stoker has made plain that he intends to litigate these charges to the fullest. Thus, the SEC will have to undertake virtually the same discovery, motion practice, and trial preparation with respect to Mr. Stoker as it will have to undertake with respect to Citigroup. Indeed, this was the very reason this Court put the two cases on the same schedule. *Citigroup,* 827 F.Supp.2d at 335, 2011 WL 5903733, at *6. The SEC's increased burdens from not having the settlement with Citigroup approved at this point are therefore minimal.

Citigroup may have a slightly stronger claim that it would be required to extend additional resources, although one would need to know more about its insurance coverage to evaluate this fully. But again, such burdens arise from the Court's denial of the overall settlement, and not from its denial of the proposed injunctive provisions of that settlement, which would be the only basis for an appeal under § 1292(a)(1). This is likewise true with respect to Citigroup's argument that it will be irreparably injured if the consent judgment is only approved after trial is over because the parties cannot be returned to

the position they were in when Citigroup and the SEC agreed to settle the case. Citigroup Mem. at 4. Citigroup does not specify how this would be so, and it is hard to see how this would be so, except in the respect already discussed of expending resources for discovery, motion practice, and trial, which do not relate to the denial of the injunctive relief *per se.*

The even more fundamental problem with all these arguments is that if these kinds of "harms" were sufficient to justify interlocutory appeals, the final judgment rule would effectively be rendered a nullity. Thus, in *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), a case involving a refusal by a district court to enforce a settlement agreement, a unanimous Supreme Court expressly held that such harms cannot support an interlocutory appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). As the Court (per Justice Souter) stated, there are innumerable situations, including rejections of settlement agreements, where the effect is to force the parties to litigate and go to trial even though they had expressly bargained not to. "But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere identification of some interest that would be 'irretrievably lost' has never sufficed to meet the [*Cohen* requirements]." *Id.* at 872, 114 S.Ct. 1992 The Court therefore held that a mere "refusal to enforce a settlement agreement claimed to shelter a party from suit altogether" cannot, without more, provide the basis for an interlocutory appeal under the collateral order doctrine. *Id.* at 884, 114 S.Ct. 1992. The same reasoning applies to the instant appeal under § 1292(a)(1).

In short, it seems patently clear that the parties have no basis for an appeal under § 1292(a)(1). In tacit recognition of this fact, the SEC, following the two above-quoted sentences in footnote 2 to its memorandum, adds the following: "The Commission alternatively will seek a writ of mandamus so that in the event that the Second Circuit concludes that it lacks jurisdiction under Section 1292(a)(1), the order nevertheless will be reviewable." SEC Mem. 8 n. 2. The standards for mandamus are even more onerous than those under § 1292(a)(1), *see Cheney v. U.S. Dist. Court for Dist. of Columbia,* 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004), and neither the SEC nor Citigroup has actually sought a writ of mandamus from the Court of Appeals. Nor, in any event, would the mere application to the Court of Appeals for a writ of mandamus deprive a district court of jurisdiction in any respect, *see, e.g., Hubbard v. Midland Credit Management, Inc.,* 2009 WL 2148131, at *1 (S.D.Ind. July 16, 2009). Indeed, if it were otherwise, a disgruntled litigant who had no statutory basis for an interlocutory appeal could nevertheless bring the litigation to a crashing halt by the simple device of filing for mandamus. Nor does the SEC's stated intention to apply for mandamus as an alternative to a statutory appeal generate an obligation on the part of this Court to consider its request for a stay. Nor, for that matter, does there appear to be any reported case in this district in which a district court granted a stay so that the party could seek mandamus.

In short, given the Court's conclusion that the purported statutory basis for the instant appeals is patently defective, and given the absence of any obligation to consider a stay on the basis of the SEC's putative intention to seek mandamus, there is no occasion for the Court to address the merits of the parties' request for

a stay. Accordingly, the motion for a stay is hereby denied.

SO ORDERED.

### SUPPLEMENTAL ORDER

This order supplements the Memorandum Order issued by this Court on December 27, 2011 (document # 46 on the docket of this case), which denied the parties' request for a stay of these proceedings pending interlocutory appeal. On December 16, 2011, the SEC filed its original motion before this Court (document # 41 on the docket of this case) seeking a stay pending appeal. The SEC expressly made the motion returnable December 30, 2011. *Id.* Nonetheless, in the interest of expediting consideration of the motion, the Court, *sua sponte*, reached out to the parties, asked Citigroup to put in its papers before December 30th, and promised to then consider the matter on a more expedited basis than that originally proposed by the SEC. Citigroup filed its responsive papers on December 20, 2011. The Court then spent the intervening Christmas holiday considering the parties' positions and drafting an opinion, so that it could file it on December 27, *i.e.*, the first business day after the Christmas holiday (well before the December 30th date on which the SEC had originally made the motion returnable and well before any further proceedings in the case).

On December 27th, at around noon, without any notice to this Court and without inquiring as to when the Court was going to issue its decision, the SEC filed an "emergency motion" in the Court of Appeals, seeking a stay pending appeal or,

in the alternative, a temporary stay, and representing that the motion was unopposed by Citigroup.[1] Motion to Stay, *SEC v. Citigroup Global Mkts. Inc.*, No. 11–5227, 2011 WL 6937373 (2d Cir. Dec. 27, 2011), Dkt. 20 ("SEC Motion"). The SEC also represented to the Court of Appeals that this Court had not yet acted on the SEC's motion to stay, *see id.* at *6, without mentioning any of the foregoing history from which the SEC was on notice that this Court's decision was imminent.

As the reason for proceeding on an emergency basis, the SEC stated that Citigroup had only until January 3, 2012 to answer or move to dismiss the underlying Complaint, and that "[i]f Citigroup files its answer, denying some or all of the allegations in the complaint, or if Citigroup moves to dismiss, challenging the complaint's legal sufficiency, it will disrupt a central negotiated provision of the consent judgment pursuant to which Citigroup agreed not to deny the allegations in the complaint." SEC Motion at 8. This statement would seem to have been materially misleading in at least four respects. First, as a legal matter, a motion to dismiss (unlike an answer) does not constitute either an admission or denial; it is a legal challenge to the face of the complaint. Second, as a factual matter, the SEC was either already aware that Citigroup was planning to move to dismiss rather than to answer (see below) or could have readily found this out by calling counsel for Citigroup.[2] Third, nowhere in the parties' underlying papers to this Court seeking a stay had the parties argued that January 3rd was a critical or even material date. Fourth, in light of the fact that this

---

1. Of course, the motion was unopposed because both parties have filed appeals from this Court's rejection of the parties' proposed Consent Judgment. The adversary system does not operate in the normal way in such circumstances because there is no one before

the Court of Appeals responding on behalf of this Court to the parties' arguments.

2. The SEC had to contact Citigroup in order to represent that the motion was unopposed.

Court's position was not before the Court of Appeals, the SEC was under a professional obligation to bring to the attention of the Court of Appeals the fact that the Supreme Court of the United States had previously ruled that the denial of the fruits of a settlement does not, without more, provide a basis for interlocutory appeal, let alone a stay. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 884, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994).

There appears to have been a similar misleading of this Court. Specifically, at around 3:30 pm on December 27th, the parties jointly called this Court to present Citigroup's application for additional pages for its motion to dismiss to be filed on January 3rd (an application this Court granted). At no point in that conversation did the parties reveal that the SEC had moved a few hours earlier in the Court of Appeals for an emergency stay or that the "emergency" purportedly related to the January 3rd filing date.

At approximately 4:20 pm, the Court of Appeals granted the SEC's request for a temporary stay until January 17, 2012, when a motions panel of the Court of Appeals will consider the motion for a stay. Virtually simultaneously, at 4:21 pm, this Court, totally unaware of any of the filings in the Court of Appeals, issued its Memorandum Order denying the stay. The Court of Appeals therefore rendered its decision without having received this Court's Memorandum Order and having before it only the materially misleading papers of the SEC. Likewise, both parties, by failing to notify this Court of the SEC's emergency motion in the Court of Appeals even while holding a telephone conference with this Court on the afternoon of December 27 to discuss Citigroup's proposed request for an extension of page limits on the January 3rd motion to dismiss, thereby held back from this Court material information it needed to do its job.

Accordingly, the Court is filing this Supplemental Order, both to make the Court of Appeals aware of this background and to attempt to prevent similar recurrences. Specifically, the parties are hereby ordered to promptly notify this Court of any filings in the Court of Appeals by faxing copies of any such filings to this Court immediately after they are filed in the Court of Appeals. In addition, this Court will send a copy of this Supplemental Order, as well as the Memorandum Order that it supplements, to the Court of Appeals with a request that they be furnished to the motions panel hearing the stay motion on January 17, 2012.

SO ORDERED.